**Bryan ROBIN and Michael Averette, Appellants,**

v.

**ENTERGY GULF STATES, INC., Appellee.**

No. 09–01–099 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 4, 2002.

Decided Nov. 21, 2002.

David W. Starnes, Beaumont, James R. Clary, Jr., Clary Law Firm, Inc., Randy Piedrahita, Due, Caballero, Price, Guidry, Piedrahita & Andrews, Baton Rouge, LA, for appellants.

Paul A. Scheurich, Christine S. Kibbe, Entergy Gulf States, Inc., Beaumont, Louis Leonard Galvis, Entergy Gulf States, Inc., New Orleans, LA, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

Our Opinion of October 17, 2002, is withdrawn and this Opinion is substituted. Appellants' motion for rehearing is denied.

Bryan Robin and Michael Averette (appellants) appeal from a take-nothing judgment. Appellants filed suit against Entergy Gulf States, Inc. (appellee) contending appellee's negligence caused injuries sustained by appellants on October 11, 1996. On that day, a mobile crane transporting a large piece of sheet metal came into con-

tact with energized, overhead power lines installed by appellee. Appellants were in direct physical contact with the piece of sheet metal when the crane contacted the power line, and they suffered severe injuries. The accident occurred while appellants were working for Volks Constructors (Volks), a steel fabrication company, in Prairieville, Louisiana.

Appellee filed a motion to have Louisiana law applied as the governing substantive law, pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 71.031 (Vernon Supp. 2002), and TEX.R. EVID. 202. The parties apparently litigated the choice of law issue extensively, with the trial court ultimately granting appellee's motion. The trial court subsequently notified all counsel that the issue of "employer fault" would be submitted to the jury, as well as the liability of any other non-party tortfeasors, and that the fault would be established proportionally. The trial court reasoned that the necessity for these jury questions was dictated by Louisiana substantive law, as opposed to Louisiana civil procedure. While the trial court considered this "the primary issue raised by this Court's previous ruling that Louisiana substantive law would apply[,]" no complaint is presented on appeal that the trial court erred in this regard.

The parties agreed that a portion of the trial court's instructions concerning Louisiana law would be provided to the jury orally, while the main part of the jury instructions, including admonishments, the single legal definition of "proximate cause," and the jury questions, were provided in both oral and written form.[1] The jury was asked to assess the fault of five individuals and companies in causing the accident, and to determine the amount of the damages suffered by both appellants. The jury questions asked about the conduct of both of the individual appellants, the appellee, and two non-party potential tortfeasors. The jury found appellants' employer, a non-party, solely at fault in causing appellants' injuries, resulting in a take-nothing judgment.

Appellants' first issue asserts that the trial court's oral instructions on Louisiana law incorrectly stated the duty of care owed by a utility company operating in Louisiana,[2] and that the trial court erred in omitting various "correct" statements of Louisiana law in its oral instructions to the jury. Their second issue essentially asserts that the verdict of the jury in its answer to question one is manifestly unjust in light of the overwhelming weight and preponderance of the evidence supporting appellee's negligence.

■ Both parties cite numerous Louisiana appellate court cases in support of their respective positions on various facets of both issues. We apply the substantive legal principles of Louisiana law. Nevertheless, we apply the Texas standards of appellate review. We believe this to be the correct approach: applying the substantive law of Louisiana, where the accident occurred, and the procedural law of Texas, where the case was tried to a jury.

---

1. TEX.R. CIV. P. 271 provides: "Unless expressly waived by the parties, the trial court shall prepare and in open court deliver a written charge to the jury."

2. It is not entirely clear that appellants preserved their "erroneous instruction" complaint for appellate review as the record is silent as to any specific objection to the trial court's oral instruction on Louisiana substantive law. *See M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 631 (Tex.App.-Houston [14th Dist.] 1992, writ denied) ("To preserve such complaints, Rule 274 requires only that the objecting party point out distinctly the objectionable matter and the grounds of the objection. TEX.R. CIV. P. 274.").

The Texas standard of appellate review of alleged jury charge error has been described generally as an abuse of discretion standard. *Steak & Ale of Texas, Inc. v. Borneman,* 62 S.W.3d 898, 904 (Tex.App.-Fort Worth 2001, no pet.). And generally, a trial court is afforded even greater discretion when submitting jury instructions than when submitting jury questions. *Id.; Wal–Mart Stores, Inc. v. Middleton,* 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied). The discretion afforded submission of instructions is not absolute, however. *See* TEX.R. CIV. P. 277. Pursuant to Rule 277, a trial court must submit instructions "as shall be proper to enable the jury to render a verdict." "For an instruction to be proper, it must: (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and evidence. TEX.R. CIV. P. 277, 278[.]" *Borneman,* 62 S.W.3d at 904–05. An instruction that misstates the law as applicable to the facts, or one that misleads the jury, is improper. *See generally Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 90 (Tex.1973). So while the standard of review may be stated generally as an abuse of discretion standard, the issue of whether terms are properly defined or the instruction properly worded is a question of law reviewed *de novo* on appeal. *See Lee v. Lee,* 47 S.W.3d 767, 790 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). The issue we confront first is whether the trial court's instructions accurately stated Louisiana law, an issue of law we review *de novo. See id.*

In their appellate brief, appellants complain of charge error in the following manner: "The court's charge contained the wrong standard of care for a utility company operating in Louisiana. The court erroneously instructed the jury that 'mere compliance with minimum safety standards may not, per se, relieve a utility company of its duty to exercise **reasonable care.**'" [emphasis in original]. Appellant argues that the use of the words "reasonable care" misstated the duty of the power company, since its duty was one of "utmost care." Appellants also complain of the trial court's use of the word "practical" rather than "practicable" in explaining the duty of utmost care.

We must examine the jury charge in its entirety, not merely a small portion out of context. *See Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). The relevant portion of the trial court's oral jury instruction reads as follows:

Substantive law of this case is governed by Louisiana law. Under the law of Louisiana, I charge you that the defendant, Entergy Gulf States, Incorporated, is not strictly or absolutely liable for injuries occurring in connection with its electric facilities and the defendant electric company cannot be found liable to the plaintiffs unless the plaintiffs have proven by a preponderance of the evidence that the defendant electric company was guilty of negligence or fault and that such negligence or fault was a legal cause of the plaintiffs' injuries.

A power company which maintains and employs high power lines, however, is required to exercise the utmost care to reduce hazards to life as far as practical. As such, a power company is required to recognize that its conduct involves the risk of harm to another if a reasonable person would do so while exercising such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence and judgment as a reasonable electric utility would have.

The standard becomes, in other words, that of a reasonable person with superior attributes. If it should be rea-

sonably anticipated by the electric utility that persons may come into contact with its electric lines, the utility is required to insulate them or to give adequate warning of the danger or to take other proper and reasonable precautions to prevent injury in order to satisfy its duty of utmost care.

We find no error by the trial court in its explanation of applicable Louisiana law. First, we note that substantially similar wording was used in a charge approved in *Fleniken v. Entergy Corp.*, 780 So.2d 1175, 1184 (La.App. 1st. Cir.2001), which specifically included the word "practical" in lieu of appellants' preference for the word "practicable." Second, the Louisiana Supreme Court has explained the "utmost care" duty of a power company in terms of how a "reasonable person with superior attributes" would act under similar circumstances. *See Levi v. Southwest La. Elec. Membership Coop.*, 542 So.2d 1081, 1084 (La.1989). The trial court's instruction tracks this explanation and properly defines the power company's duty of utmost care in the context of the standard of conduct to be expected, under similar circumstances, of a reasonable person with the superior attributes of an electric utility.

We note that Louisiana has rejected absolute liability as a theory of recovery to be imposed upon an electric utility company. *See Kent v. Gulf States Util. Co.*, 418 So.2d 493, 499 (La.1982). "[A]n electric utility is not required to guard against situations which cannot reasonably be expected or contemplated." *Hebert v. Gulf States Util. Co.*, 426 So.2d 111, 114 (La. 1983) (citing *Simon v. Southwest La. Elec. Membership*, 390 So.2d 1265, 1267 (La. 1980)). Also, we note that the Louisiana Supreme Court has explained the legal duty of a power company using the phrase "reasonable care" in the following manner:

The legal duty under one approach and the standard of conduct under the other impose the same obligation, viz., when the power company realizes or should realize that the transmission of electricity through its line presents an unreasonable risk of causing physical harm to another, it is under a duty to exercise reasonable care to prevent the risk from taking effect.

*Levi*, 542 So.2d at 1084. From these principles, we conclude that, while a utility company owes a duty of utmost care in Louisiana, the duty necessarily is tempered by an element of reasonableness. Louisiana law does not require irrational conduct, nor does it impose absolute liability without regard to what a reasonable person with a power company's superior attributes would do under similar circumstances. In essence, this is what the trial court told the jury. We conclude the trial court did not err in providing the instructions to the jury contained in the record before us.

Appellants also appeal the trial court's refusal to submit four additional and alternative oral instructions on Louisiana substantive law: their requested instructions seven, eight, nine, and ten. As noted above, trial courts have considerable discretion in deciding what instructions are necessary and proper to include in the charge to the jury. *See State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex.1997); TEX.R. CIV. P. 277. Even correct statements of the law should not be submitted if unnecessary. *See Acord v. General Motors Corp.*, 669 S.W.2d 111, 114–16 (Tex.1984). We need not consider whether appellants' requested instructions were correct statements of the law, or whether they would have been comments on the weight of the evidence if given to the jury. As the trial court correctly instructed the jury on the legal duty owed

by a power company under Louisiana law, any additional instruction was unnecessary. Appellants' first issue is overruled.

Appellants next question the existence of factually sufficient evidence to support the jury's verdict. When a party with the burden of proof attacks the jury's adverse finding on a factual sufficiency ground, the party's initial burden on appeal is to demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). The reviewing court examines the record to determine if there is some evidence to support the finding; if so, the reviewing court then must determine, in light of the entire record, whether the finding is nevertheless so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). As a reviewing court, we are mindful that the jury simply may not have been convinced, by a preponderance of the evidence, of the truth of the fact asserted by the party with the burden of proof. *See Herbert,* 754 S.W.2d at 144. A reviewing court may not reverse the judgment simply because the court concludes that the evidence weighs toward an answer more favorable to the appellant. *Id.* A Texas appellate court is not a finder of fact.

In the instant case, a number of witnesses testified in the fields of electrical engineering, employer safety responsibilities, and public utilities; whether appellee and Volks complied with appropriate standards were subjects of considerable testimony. Witnesses testified that Volks violated numerous safety requirements. Also, testimony was presented that, some time after a 1993–1994 expansion of the Volks' facility was complete but before the accident, Volks requested a cost-estimate

from appellee to place the overhead power lines underground. This request was made to appellee's engineering associate, Calvin David Bowman. Bowman worked up an estimate, contacted a Volks representative and provided the cost. Volks apparently did not respond one way or the other at that time, but later contacted Bowman and again requested a cost-estimate for burying the power lines. Bowman again visited the Volks facility, returned to his office and worked-up a new cost-estimate. Bowman again called Volks with the re-worked estimate and Volks' responded by indicating that the expense was too great. The power lines were not buried at that time. Bowman subsequently discarded the files dealing with both contacts with Volks prior to the accident.

The jury was free to believe or disbelieve any witness or any portion of a witness' testimony. Testimony was presented by each party which effectively contradicted or neutralized testimony presented by its opponent; the jury was required to determine the credibility of the witnesses. For example, appellants' presented evidence that prior to the 1993–1994 expansion, Volks' specifically asked appellee about burying the power lines in question, but was told by appellee that the equipment to bury the lines was not available. Nevertheless, the jury could have rejected this testimony entirely. Appellants' own expert witness said he doubted a power company would not have the necessary equipment. The jury reasonably could have accepted Calvin Bowman's testimony with regard to Volks' rejection of the burial of the power lines. From Bowman's testimony, coupled with other testimony that under Louisiana law a power company is not permitted to pass un-reimbursed installation/delivery costs on to its non-benefitting customers, the jury reasonably could have concluded that Volks' refusal to

pay for the burial of the lines only months prior to the accident was a determinative factor. From the evidence presented, the jury reasonably could have concluded Volks' negligence, including its veto of the burial of the line, was the sole cause of the accident. We conclude the jury's findings are not contrary to the overwhelming weight and preponderance of the evidence. Appellants' second issue is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.

Dissenting Opinion by Justice BURGESS.

DON BURGESS, Justice, dissenting.

I respectfully dissent to the majority's resolution of the sufficiency of the evidence issue. The majority states: "From the evidence presented, the jury reasonably could have concluded Volks' negligence, including its veto of the burial of the line, was the sole cause of the accident." I am afraid the majority does not fully appreciate the legal duty of a power company under Louisiana law. In *Hebert v. Gulf States Utilities Co.*, 426 So.2d 111, 114–15 (La.1983) (citations omitted), Justice Cologero [3] stated:

Electric transmission companies which maintain and employ high power lines are required to exercise the utmost care to reduce hazards to life as far as practicable. However, an electric utility is not required to guard against situations which cannot reasonably be expected or contemplated.

. . . .

. . . The three-fold duty of the utility in cases where injury is easily associated with the transmission of electricity over high power lines, as set forth in *Simon*

*[v. Southwest La. Elec. Membership Corp.*, 390 So.2d 1265 (La.1980) ], is (1) to insulate the lines, or (2) to warn adequately of the danger, or (3) to take other proper and reasonable precautions to prevent injury . . . .

Later the Louisiana Supreme Court, in *Levi v. Southwest Louisiana Electric Membership Cooperative*, 542 So.2d 1081, 1084–85 (La.1989) (citations omitted), commented further on the duty of utmost care:

Pursuant to this duty, a power company has an obligation to make reasonable inspections of wires and other instrumentalities in order to discover and remedy hazards and defects. Consequently, a company will be considered to have constructive knowledge of an electrical hazard which has existed for a period of time which would reasonably permit discovery had the company adequately performed its duties.

An Entergy employee testified that as early as 1979 Entergy knew cranes were to be used in the yard. The fact that Volk would not pay for burial of the lines in the 1993–1994 expansion does not relieve Entergy of their duty to both inspect the facilities for potential hazards and to properly insulate the lines by isolation, i.e. raise the lines above the height of cranes. There are many Louisiana cases recognizing this duty and finding utility companies negligent for failing to recognize the danger of low lines and failing to remedy the danger. *See Fleniken v. Entergy Corp.*, 780 So.2d 1175 (La.Ct.App.), *writ denied*, 793 So.2d 1250 (La.2001); *Ayres v. Beauregard Elec. Coop.*, 663 So.2d 127 (La. Ct.App.), *cert. denied*, 664 So.2d 455 (La. 1995); *Duncan v. La. Power & Light Co.*, 594 So.2d 1119 (La.Ct.App.), *cert. denied*, 600 So.2d 644 (La.1992); *Lajaunie v. Central La. Elec. Co.*, 552 So.2d 746 (La.Ct.

3. Now Chief Justice of the Court.

App.1989), *cert. denied,* 558 So.2d 1130 (La.1990); and *Horton v. Valley Elec. Membership Corp.,* 461 So.2d 375 (La.Ct. App.1984).

Here the jury's failing to attribute any negligence[4] whatsoever to Entergy is clearly against the great weight and preponderance of the evidence. I would reverse and remand for a new trial.

**4.** It would be improper for me to suggest what percentage of negligence should be assigned, but certainly greater than zero.