**STEAK & ALE OF TEXAS, INC.
d/b/a Bennigan's, Appellant,**

v.

**Lea BORNEMAN, Appellee.**

**No. 2–97–046–CV.**

Court of Appeals of Texas,
Fort Worth.

Dec. 6, 2001.

Rehearing Overruled Jan. 10, 2002.

Haynes and Boone, LLP and Sharon N. Freytag; Jackson & Walker, LLP; Lee M. Simpson and Linda S. Althoff, Dallas, for appellant.

Law Offices of Robert W. Hammer; Robert W. Hammer and Robert Meador; and Jose, Henry, Brantley & Keltner, LLP; David E. Keltner and Karen S. Precella, Fort Worth, for appellees.

PANEL B: DAY, LIVINGSTON, and GARDNER, JJ.

## OPINION ON REMAND

ANNE GARDNER, Justice.

This is a dram shop case. We previously determined that the trial court erred in submitting the dram shop causation question because the question did not track the statutory causation standard. Because we held that the submitted question omitted an element of appellee Lea Borneman's cause of action and she failed to object, we reversed the trial court's judgment and rendered judgment in favor of Steak and Ale of Texas, Inc. d/b/a Bennigan's. *Steak & Ale v. Borneman*, No. 2–97–046–CV, slip op. at 7, (Tex.App.—Fort Worth Aug.31, 1998) (not designated for publication), *rev'd*, 22 S.W.3d 411, 413 (Tex.2000). The supreme court agreed that the charge was erroneous, but held that we should not have rendered judgment because the error was a defect, not an omission. *Borneman v. Steak & Ale*, 22 S.W.3d 411, 413 (Tex. 2000). The supreme court remanded the case to us for consideration of points not addressed in our prior opinion.

### Remaining Points

According to the supreme court's holding, Bennigan's is entitled to a new trial because of the defective jury question concerning causation. Bennigan's first point, which raises a no-evidence challenge to the jury's liability finding, is the only point under which we could afford Bennigan's greater relief than the supreme court has granted because if Bennigan's prevailed, we would render judgment for Bennigan's, thereby obviating the necessity of a new trial. TEX.R.APP. P. 43.3; *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986) (quoting *Nat'l Life Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969)). As discussed below, the evidence is legally sufficient to support the jury's liability finding, so we will remand the case for a new trial. Generally, we would not address Bennigan's remaining points because to do so at this juncture, before the new trial, would be advisory. *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 443 (Tex.1998) (holding state courts are not empowered to give advisory opinions). However, because the disposition of points six, eight, and nine, which complain of another jury instruction and the exemplary damages award, is critical to the correct re-trial of this case, we also address those points.

### Evidence of Liability

■ In its first point, Bennigan's asserts that the trial court erred in overruling Bennigan's motion for judgment notwithstanding the verdict because there was no evidence to support the jury's answer to the dram shop liability question. That question stated:

> On or about the date of the occurrence in question, did STEAK & ALE OF TEXAS, INC. D/B/A BENNIGAN'S provide, sell, or serve alcoholic beverages to NEHEMIAH FRANKLIN when

it was apparent to BENNIGAN'S that NEHEMIAH FRANKLIN was obviously intoxicated to the extent that he presented a clear danger to himself and others?

The jury answered "yes."

■ In determining a "no-evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Continental Coffee Prods. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Legally sufficient evidence exists if there is more than a scintilla of such evidence to support the finding. *Cazarez*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996).

■■ In order to hold a provider of alcoholic beverages liable under the alcoholic beverage code, a plaintiff must prove: 1) at the time that the provider sold or served the alcohol it was apparent to the provider that the recipient was obviously intoxicated to the extent that he presented a clear danger to himself and others, and 2) the intoxication of that individual proximately caused the damages suffered. TEX. ALCO. BEV.CODE ANN. § 2.02(b) (Vernon 1995); *Southland Corp. v. Lewis*, 940 S.W.2d 83, 84–85 (Tex.1997). The test is an objective one. *Fay–Ray Corp. v. Tex. Alco. Bev. Comm'n*, 959 S.W.2d 362, 366 (Tex.App.—Austin 1998, no pet.). Because Borneman had the burden of proof on this issue at trial, Bennigan's must show there is no evidence or, at most, no more than a scintilla of evidence to support this finding. *Cazarez*, 937 S.W.2d at 450; *I–Gotcha, Inc. v. McInnis*, 903 S.W.2d 829, 838 (Tex. App.—Fort Worth 1995, writ denied).

Lea Borneman was injured in a one-car accident on August 24, 1991. Nehemiah Franklin was driving the car, Michael Nimon was the front-seat passenger, and Borneman and another woman were back-seat passengers. Franklin and Nimon had been drinking at Bennigan's prior to the accident. Bennigan's contends that there is no evidence that Franklin was obviously intoxicated to the extent that he provided a clear danger to himself and others or, if he was, that this level of intoxication was apparent to Bennigan's at the time Franklin was served alcohol.

Franklin and Nimon arrived at Bennigan's between 7:00 and 8:00 p.m. and remained there until last call at midnight. Both were twenty years old, which is below the legal drinking age. Bennigan's did not ask them for identification. They both conceded they went to Bennigan's for the purpose of getting drunk and claimed to have gotten drunk at Bennigan's on other occasions.

They did not sit in the bar area because Nimon is confined to a wheelchair and the bar area is not wheelchair accessible. At least two different people waited on them at the table, and Franklin also went to the bar to get drinks because the waiters were too slow. The only food they ate consisted of several orders of quesadillas, which they shared.

The two men drank beer, Kamikazees, and Flaming Dr. Peppers. A Kamikazee consists of 1 1/4 ounce of vodka, 3/4 ounce of triple sec, and lime juice, which are mixed in a shot glass. A Flaming Dr. Pepper consists of a shot glass filled 3/4 full of amaretto and 1/4 of 151 proof Bacardi rum. The shot is then dropped into one-half of a beer, which is 5 ounces, and the customer then "chugalugs" or drinks the entire drink at once.

Franklin and Nimon had a drinking competition, trying to keep up with each other. Even though they could not remember how many drinks they had had, both testified that they had "a lot" to drink

and that Bennigan's served them enough alcohol to make them intoxicated. They drank the entire time they were at Bennigan's. Sometime after the first two hours, Franklin left several times to visit a friend working at a nearby store and to give her a ride home. He was gone for 15 to 20 minutes each time. He did not drink while he was gone, but resumed drinking when he returned. Franklin's step-father was with them for 30 minutes to an hour. He told them that they were both "wasted" and that Nimon was too drunk to drive.

Franklin admitted that he was very intoxicated at Bennigan's and that alcohol affected everything he did that night. Nimon testified that it was obvious to him while he was at Bennigan's that he was intoxicated and that the alcohol affected his judgment. According to Franklin, the men were loud and boisterous, laughing, giggling, dancing, and grabbing at each other. Nimon testified that their behavior at Bennigan's was inappropriate. Both men admit that they were too drunk to know whether they exhibited signs of intoxication such as slurred speech or lack of coordination. Immediately before the accident, Franklin leaned over to Nimon and admitted that he was "f____ up," meaning he was drunk. The car jerked to the left, went over the median, and "flipped." Franklin "took off" running from the scene of the accident. He was found by an officer passed out in a front yard a few blocks away.

Nimon's credit card bill that night was $194.62. After deducting the food, tips, and tax, Nimon purchased about $108 worth of alcohol. Moreover, the two men took turns paying, with Franklin paying his portion in cash. Bennigan's area manager testified that it would be dangerous to serve two people even $108 worth of Flaming Dr. Peppers, Kamikazees, and beer.

Two bartenders who worked at Bennigan's on August 24, 1991 testified. They did not remember Franklin or Nimon. They both received on-the-job training, which included recognizing signs of intoxication. In addition to visual clues, Bennigan's staff can monitor a customer's intoxication by observing the number of drinks served.

Dr. Angela Springfield, the chief toxicologist for the Tarrant County Medical Examiner's office, testified about the effects of alcohol on the human body. A person with a blood alcohol level between .04 and .12 would demonstrate a lessening of finer motor skills, take more risks, and be less able to perform complicated tasks such as driving. Such a person's eyes might be flushed and their emotions would change. With a blood alcohol level of .09 to .18, a person would experience changes in perception, memory, and critical judgment, all of which would affect that person's driving ability. Such a person would demonstrate changes in walking even though the drinker would not necessarily stagger or fall down. An untrained observer would not notice signs of obvious intoxication until the drinker's blood alcohol level neared the .15 to .20 range.

Dr. Gary Wimbish, a toxicologist with Harrison Laboratories in Midland, Texas, also testified about the symptoms of intoxication. At first, the drinker becomes more loquacious, outgoing, and interactive socially, often talking nonsense. At the point of intoxication, the drinker will have some speech pattern slurring, fine motor skills might be affected, the drinker may have difficulty maintaining balance without swaying, and the eyes will become bloodshot.

According to Dr. Springfield, a person of Franklin's weight and height would be obviously intoxicated with a .20 blood alcohol level after drinking six Flaming Dr. Pep-

pers during a six-hour time period, or four Flaming Dr. Peppers during a two-hour period followed by two more Flaming Dr. Peppers or five beers in the following four hours, or less for a period of less than four hours. Eating quesadillas would have minimal effect on the blood alcohol level of someone drinking at this rate.

The evidence of the amount of alcohol consumed over a four to five hour time period, coupled with Franklin's repeated admissions that he was obviously intoxicated, is more than a scintilla of evidence that Franklin was obviously intoxicated to the extent he presented a clear danger to himself and others. We hold the evidence is also legally sufficient to show that it was apparent to Bennigan's that Franklin was this intoxicated when it provided him alcohol. The waiters, waitresses, and bartenders could observe Franklin each time they served him. Franklin and Nimon were loud and acted inappropriately. According to Dr. Springfield, they would have exhibited signs of intoxication after drinking the amount of alcohol they consumed. Franklin and Nimon spent a minimum of $108 on alcohol and most likely spent a great deal more, which should have alerted Bennigan's to the fact that Franklin was obviously intoxicated. Indeed, Bennigan's even admits that it is "dangerous" to serve someone this much alcohol. Because we find the evidence legally sufficient to support the jury's liability finding, we overrule point one.

### *Jury Instruction*

■ In point six, Bennigan's complains about a jury instruction: "The law forbids an alcoholic beverage licensee to provide, sell, or serve, under authority of his license, alcoholic beverages to an individual when it is apparent to the licensee that the individual is obviously intoxicated to the extent that he presents a clear danger to himself and others." Bennigan's contends that this instruction is an erroneous statement of the law, constitutes an impermissible comment on the weight of the evidence, and informed the jury of the consequences of its verdict.

■ In response, Borneman asserts that Bennigan's did not preserve these complaints for appellate review because it did not raise them in the trial court. At the charge conference, Bennigan's objected to "the law forbids" language in the instruction because this additional language is not found in section 2.02 and it conveys a punitive or criminal connotation to the jury. These objections are sufficient to preserve Bennigan's complaint that the instruction misstates the law, but not its other complaints concerning the instruction.

■ The standard of review for alleged jury charge error is abuse of discretion. *Paul Mueller Co. v. Alcon Lab., Inc.*, 993 S.W.2d 851, 853 (Tex.App.—Fort Worth 1999, no pet.). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

■ When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. *Wal–Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex.App.—San Antonio 1998, pet. denied). However, the discretion afforded during the submission of instructions is not absolute. *See* TEX.R. CIV. P. 277. According to rule 277, a trial court must submit instructions "as shall be proper to enable the jury to render a verdict." *Id.*

■ For an instruction to be proper, it must: (1) assist the jury, (2) accurately state the law, and (3) find support in the

pleadings and evidence. Tex.R. Civ. P. 277, 278; *Middleton*, 982 S.W.2d at 470. An instruction that misstates the law as applicable to the facts or one that misleads the jury is improper. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973); *Owens–Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 721–22 (Tex.App.—Dallas 1997, no pet.); *White v. Liberty Eylau Indep. Sch. Dist.*, 920 S.W.2d 809, 812 (Tex.App.—Texarkana 1996, writ denied).

Section 2.02 of the Dram Shop Act establishes civil liability for serving alcohol; it does not provide for regulatory or criminal penalties. Tex. Alco. Bev.Code Ann. § 2.02; *Smith v. Merritt*, 940 S.W.2d 602, 607–08 (Tex.1997). The law does not forbid the action proscribed by section 2.02; instead, it makes the provider liable under specifically stated conditions.

Nevertheless, Borneman argues that the instruction correctly states the law because other sections of the Dram Shop Act establish regulatory and criminal penalties for providing alcohol to intoxicated persons. *See* Tex. Alco. Bev.Code Ann. § 101.01–.75 (Vernon 1995 & Supp.2002). We believe the instruction misstates the law because section 2.02 provides Borneman's sole remedy. However, even if the instruction correctly states the law, as Borneman contends, it was misleading as applied to the facts in this case because those regulatory and criminal penalties are not at issue here. Therefore, we hold that the trial court abused its discretion. We sustain point six.

**1.** *See* Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (current version at Tex. Alco. Bev.Code Ann. §§ 2.01–2.03 (Vernon 1995)).

**2.** Two courts, including this court, have performed evidentiary reviews of punitive damage awards in dram shop actions. The issue

*Exemplary Damages*

Bennigan's also raises two complaints attacking the exemplary damages award. In point eight, Bennigan's argues that the trial court erred by submitting gross negligence and exemplary damages questions to the jury because exemplary damages are not recoverable under the Dram Shop Act. In point nine, Bennigan's asserts there is no evidence to support the jury's answers to the gross negligence and exemplary damages questions. The Dram Shop Act took effect more than a decade ago.[1] Since that time, no court has addressed the issue of whether punitive damages may be recovered in a dram shop claim.[2]

▬▬▬ In construing a statute, our ultimate purpose is to discover and give effect to the legislature's intent in enacting it. *In re Canales*, 52 S.W.3d 698, 702 (Tex.2001); *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 89 (Tex.2001). To do so, we may consider the statute's language, the object sought to be obtained, the history and purpose of the statute, and the consequences of alternative construction. *See* Tex. Gov't Code Ann. § 311.023 (Vernon 1998); *see also Meritor*, 44 S.W.3d at 89. If possible, however, we must ascertain the legislative purpose from the language of the statute itself. *Monsanto v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993).

▬▬▬ In determining legislative intent, we do not view the words, phrases, and individual clauses in isolation, but rather we must examine them within the context of the entire act. *Meritor*, 44 S.W.3d at 90. If possible, each sentence,

of whether punitive damages are recoverable under the Dram Shop Act was not before the court in either of these cases. *Venetoulias v. O'Brien*, 909 S.W.2d 236 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd by agr.); *I–Gotcha*, 903 S.W.2d at 829.

phrase, clause, and word must be given effect, so that the statute makes sense as a cohesive whole. *Id.* We do not assign a meaning to a term or provision that would be inconsistent with other provisions of the act. *Id.* (quoting *Clint Indep. Sch. Dist. v. Cash Invs., Inc.,* 970 S.W.2d 535, 539 (Tex. 1998)).

The Dram Shop Act created a liability unknown to common law. Before its enactment on June 1, 1987, no cause of action existed against a provider of alcoholic beverages for injuries to third parties resulting from a patron's intoxication. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 309 (Tex.1987). While in *El Chico* the supreme court created a common-law cause of action based upon principles of negligence, the legislature enacted the Dram Shop Act two days before the *El Chico* decision was handed down. *See id.* at 314. By that enactment, the legislature, virtually simultaneously with the supreme court's decision in *El Chico,* created a much more limited statutory cause of action against commercial providers of alcoholic beverages. *See Smith,* 940 S.W.2d at 605. In creating this cause of action, the legislature clearly pronounced the Dram Shop Act to be the exclusive remedy against providers of alcoholic beverages to individuals age eighteen or older:

§ 2.03. Statutory Remedy

*The liability of providers under this chapter* for the actions of their customers, members, or guests who are or become intoxicated *is in lieu of common law* or other statutory law warranties and duties of providers of alcoholic beverages. This chapter does not impose obligations on a provider of alcoholic beverages other than those expressly stated in this chapter. *This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older.*

TEX. ALCO. BEV.CODE ANN. § 2.03 (emphasis added); *see also Smith,* 940 S.W.2d at 605.

We are mindful that statutes in derogation of the common law are not to be narrowly construed under Texas law. *See* TEX. GOV'T CODE ANN. § 312.006(b) (Vernon 1998). If a statute creates a liability that was unknown to the common law, however, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview. *Smith v. Sewell,* 858 S.W.2d 350, 354 (Tex.1993); *Dutcher v. Owens,* 647 S.W.2d 948, 951 (Tex.1983); *see also Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 191 (Tex.App.—Fort Worth 1995, writ denied) (holding where cause of action and its remedy are derived from statute, statutory provisions are mandatory and exclusive and must be complied with). When ascertaining legislative intent, we look to the date of the legislature's enactment of the statute, not to the statute's effective date. *See In re Canales,* 52 S.W.3d at 702. Because there was no common-law liability extending to commercial providers of alcoholic beverages at the time the legislature enacted the Dram Shop Act, we strictly construe the statute in determining whether exemplary damages may be recovered under a dram shop cause of action.

On its face, the Dram Shop Act makes no provision for exemplary or punitive damages. With respect to damages, the Act provides only that the intoxication of the recipient of the alcoholic beverage be a proximate cause of the "damages suffered." TEX. ALCO. BEV.CODE ANN. § 2.02(b)(2). Because the term "damages suffered" is not defined in the statute, we must determine whether the legislature intended the term to mean only actual, compensatory damages, or whether it also includes exemplary or punitive damages.

■ Our purpose in construing any statute is to give effect to the legislature's intent in enacting the law. TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998); *Cash America Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex.2000). We are to consider "the statute's language, history, and purposes and the consequences of alternative constructions." *Cash America*, 35 S.W.3d at 16. We first look at "the statute's plain and common meaning." *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). Because the legislature is presumed to intend the plain meaning of its words, we must, if possible, ascertain legislative intent from the language used in the statute rather than from extraneous matters. *Id.* We may not add words into a statutory provision, absent "truly extraordinary circumstances showing unmistakable legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex.1999).

The common law provides "no meaningful guidance" regarding whether the term "damages" should be interpreted to include exemplary damages. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 892 (Tex.2000). In *Auld*, the Texas Supreme Court looked to legislative intent in holding that the term "damages" did not include "exemplary damages" under the damages cap provision of a different statute. *Id.* The legislative history here provides little guidance.

The term "damages suffered" indicates damages or injuries actually incurred by a party. To "suffer" is defined as "to submit to or endure death, affliction, penalty, or pain or distress; to sustain loss or damage." WEBSTER'S THIRD NEW INT'L DICTIONARY 2284 (1981). The term "suffer" refers to the one acted upon as distinguished from the one acting. *See id.* We consider these definitions in light of the purposes behind compensatory and punitive damages.

■ The primary purpose of awarding compensatory damages in civil actions is not to punish the defendant, but to fairly compensate the injured plaintiff. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex.2000); *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY 463 (1981) (defining compensatory damages as "damages awarded to make good or compensate for an injury sustained—distinguished from punitive damages."). Punitive damages, on the other hand, are not designed to compensate individuals, but are intended only to punish a wrongdoer and to serve as a deterrent to future wrongdoers. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 49 (Tex.1998); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 16–17 (Tex.1994); *Lunsford v. Morris*, 746 S.W.2d 471, 471–72 (Tex.1988) (orig.proceeding); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 555–56 (Tex. 1985); Malcolm E. Wheeler, *The Constitutional Case for Reforming Punitive Damages Procedures*, 69 VA. L.REV. 269, 292 (1983) ("As courts have uniformly held, no plaintiff has a right to punitive damages ... the purpose of punitive damages is to vindicate the public interest, not that of a particular plaintiff."). Thus, assessment of punitive damages focuses on the wrongdoer's conduct, while assessment of compensatory damages focuses on the injured party's damages. *See Owens–Corning*, 972 S.W.2d at 49–50. Considering the plain meaning of the words used and the purposes behind compensatory and punitive damages, we believe that inclusion of the term "damages suffered" shows legislative intent that dram shop liability extend only to compensatory damages.

We are mindful of the Texas Supreme Court's decision in *Azar Nut Co. v. Caille* concluding that the legislature did not

place any emphasis on the word "suffered" under similar statutory language, and holding that the term "damages," as used in the retaliatory-discharge provision of the worker's compensation statute, included punitive damages. 734 S.W.2d 667, 668–69 (Tex.1987). In that case, however, the court relied upon bill amendments regarding the specific provision in reaching its conclusion. *Id.* (citing conference committee amendment deleting phrase "loss of earnings suffered" and amending to read "reasonable damages"). Significantly, we have not been provided with evidence of any comparable legislative history in this case, absent which we rely on plain meaning.

█ We must read the Dram Shop Act's silence on the issue of exemplary damages in conjunction with the Act's exclusivity provisions. The Dram Shop Act is codified in the Texas Alcoholic Beverage Code, which provides that "[u]nless otherwise specifically provided by the terms of this code, the manufacture, sale, distribution, transportation, and possession of alcoholic beverages *shall be governed exclusively by the provisions of this code.*" TEX. ALCO. BEV.CODE ANN. § 1.06 (Vernon 1995) (emphasis added). Additionally, as previously noted, the legislature expressly pronounced the Dram Shop Act to be the *exclusive remedy* against providers of alcohol to individuals age eighteen or older. *Id.* § 2.03. The Act still further provides that the statutory cause of action *"is in lieu of common law* or other statutory law warranties and duties of providers of alcoholic beverages." *Id.* (emphasis added). This language clearly expresses legislative intent to exclude all common-law rights and bar all claims except those specifically authorized by the statute. *See Merritt,* 940 S.W.2d at 605, 608; *Southland Corp. v. Lewis,* 940 S.W.2d 83, 84 (Tex.1997) (both stating that the Act's exclusive remedy

provision clearly bars any common-law negligence or negligence per se causes of action); *cf. Sanders v. Constr. Equity, Inc.,* 45 S.W.3d 802, 803–04 (Tex.App.—Beaumont 2001, no pet.) (op. on reh'g) (noting that language in the Residential Construction Liability Act (RCLA) does not clearly express an intent to bar all claims, but only to the extent that an element of the claim conflicts with RCLA); *Waterfield Mortgage Co. v. Rodriguez,* 929 S.W.2d 641, 645 (Tex.App.—San Antonio 1996, no writ) (noting that Texas Debt Collection Statute, although silent with respect to punitive damages, expressly *preserves* all common law remedies, making punitive damages recoverable).

We disagree with the assertion of the dissenting opinion that we are "eliminating" an injured party's "right" to recover punitive damages. Because citizens had no common-law rights against commercial providers of alcoholic beverages prior to the enactment of the Dram Shop Act, construing the statute to exclude exemplary damages does not deprive citizens of any such rights. The legislature's insertion of these exclusivity provisions, coupled with a complete absence of any language or intent to authorize punitive damages, adds further support to our holding that the legislature did not intend punitive damages to be recoverable under a dram shop cause of action.

█ Borneman argues that the Dram Shop Act's silence does not imply an intent to exclude recovery of exemplary damages because the same legislature enacted section 41.002 of the Texas Civil Practice & Remedies Code, which shows it "knew how to draft a statute that excluded the right to recover punitive damages and certainly could have included express language in the Dram Shop Act excluding punitive damages as a remedy." However, chapter 41 does not expand or restrict any *right to*

*recover* punitive damages in the first instance. Rather, chapter 41 addresses limitations placed on punitive damages in cases where a right to recover punitive damages already exists. TEX. CIV. PRAC. & REM.CODE ANN. § 41.001–.013 (Vernon 1997 & Supp.2002). As enacted, section 41.002(d) provides a list of those causes of action specifically excepted from the statutory limitations placed on punitive damages by chapter 41. Only causes of action in which punitive damages are *already recoverable*, either under the common law, by statute, or in the constitution, are listed, because the legislature intended to exclude certain of those causes of action from the chapter 41 limitations. Thus, contrary to the dissenting opinion, we do not believe that the legislature's enactment of chapter 41, and specifically section 41.002(d), shows any legislative intent about whether punitive damages *are recoverable* under any particular statute.

Additionally, we note that the purpose behind the enactment of chapter 41 was to restrict punitive damage awards that were perceived as being excessive at the time of its enactment. *See* John T. Montford and Will G. Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System Part Two,* 25 HOUSTON L.REV. 245, 314–41 (1988). We will not interpret a statute whose purpose was to *restrict* punitive damages to *expand* the application of another statute so as to allow awards for punitive damages.

Excluding recovery of punitive damages for dram shop liability is consistent with what we believe to be the intent of the Dram Shop Act. The cause of action created by the Dram Shop Act is exclusive, applies in certain limited circumstances, and requires an "onerous burden of proof"

for an injured plaintiff. *Sewell,* 858 S.W.2d at 354 (holding statutory cause of action applies in "certain limited circumstances"); *El Chico,* 732 S.W.2d at 314 (stating statutory burden of proof much more onerous than negligence standard applied by court in *El Chico* ). In order to establish liability under the Dram Shop Act, it must be "apparent to the provider" that the individual being sold the alcoholic beverage was "obviously intoxicated to the extent that he presented a clear danger to himself and others." TEX. ALCO. BEV.CODE ANN. § 2.02(b)(1).[3] As noted by the supreme court, this onerous burden of proof requires more than simple negligence. It requires "obvious intoxication" to the extent of presenting a "clear danger" to the patron and others. *El Chico,* 732 S.W.2d at 314. Thus, the heightened burden of proof imposed by the legislature to support compensatory damages for dram shop liability approaches the heightened standard that the supreme court subsequently imposed for gross negligence to support exemplary damages. *See Moriel,* 879 S.W.2d at 23 (holding gross negligence includes two components: 1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and 2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others).

The two standards overlap to such an extent that a serious danger exists that exemplary damages based upon a finding of gross negligence, in addition to compensatory damages for the statutory liability created by the Dram Shop Act, would

---

**3.** The legislature's "clear danger to himself and others" language was taken from the public intoxication statute and states the same burden of proof necessary to convict someone of public intoxication. *Sewell,* 858 S.W.2d at 357 & n. 4 (Gonzalez, J., dissenting).

appear to constitute a double recovery. The legislature created a limited statutory cause of action, requiring a much more heightened burden of proof than simple negligence for recovery of actual damages and to the exclusion of all other common law causes of action. Allowing recovery of exemplary damages based on a finding of gross negligence would be inconsistent with the plain language and intent of the Dram Shop Act.

The legislature further expressly provided that there are no other obligations imposed upon a provider of alcoholic beverages "other than those expressly stated" under the Dram Shop Act. Tex. Alco. Bev. Code Ann. § 2.03. Thus, no other factors such as failing to stop a patron from driving, serving alcohol to minors, or even a policy to increase alcohol sales, can serve as a basis for imposing liability. Yet all of those factors are relied upon by Borneman in this case as evidence of Bennigan's gross negligence. To allow use of such factors to impose liability for gross negligence would conflict with the legislature's express intent that no additional obligations are to be placed upon a commercial provider of alcoholic beverages to establish dram shop liability. Given the language of the Dram Shop Act and its exclusivity provisions, if such factors cannot serve as a basis for liability, they cannot serve as a basis to impose punitive damages once liability is established. To construe the statute otherwise would be to impose additional obligations on a commercial provider of alcoholic beverages that the legislature has clearly prohibited. We therefore believe that this provision, construed together with the entire Dram Shop Act, also shows that allowing recovery of exemplary damages is inconsistent with the legislative intent.

■ Additionally, the purposes behind punitive damage awards are met by the policy and provisions of the Texas Alcoholic Beverage Code, into which the Dram Shop Act was codified. The Texas Alcoholic Beverage Code provides it is an express exercise of the state's police power for the protection and safety of the people of the state. Tex. Alco. Bev.Code Ann. § 1.03 (Vernon 1995). A violation under the Dram Shop Act will subject a commercial provider of alcoholic beverages to suspension or revocation of its liquor license. See id. § 11.61(b)(2) (Vernon Supp.2002). Thus, the Texas Alcoholic Beverage Code provides for both punishment and deterrence of conduct that violates its provisions. It is well settled that punitive damages serve the purpose of punishing the liable party and protecting the public. See Tex. Civ. Prac. & Rem.Code Ann. § 41.003, Owens–Corning Fiberglas, 972 S.W.2d at 39–40; Moriel, 879 S.W.2d at 16–17; Lunsford, 746 S.W.2d at 471–72. They serve to deter further wrongful conduct based upon the reasoning that the threat of punitive damages is inherently more likely to restrain wrongful conduct. See Azar Nut Co., 734 S.W.2d at 669.

In cases of dram shop liability, the policy behind punitive damages is met by the Texas Alcoholic Beverage Code's own provisions for the punishment of wrongdoers by suspending or revoking their liquor licenses, which not only deters, but even precludes commercial providers from further wrongful conduct. Because the punishment and deterrence policy behind exemplary damages is addressed under the Texas Alcoholic Beverage Code and that code exclusively governs commercial provider liability cases, we do not believe the recovery of exemplary damages in cases of dram shop liability is consistent with the purposes of the statute.

■ Considering and giving effect to the plain meaning of the words used, the Dram Shop Act's silence on the issue of

exemplary damages, and construing the Act and the code into which it was enacted as a whole and the relevant policy considerations, we conclude that the legislature did not intend for punitive damages to be available for a violation of the Dram Shop Act. "When the legislature has actively entered a particular field and has clearly indicated its ability to deal with such a policy question, the more prudent course is for [the] [c]ourt to defer to the legislative branch." *Merritt*, 940 S.W.2d at 608–09 (Hecht, J., joined by Owen, J., concurring) (quoting *Bankston v. Brennan*, 507 So.2d 1385, 1387 (Fla.1987)).

Our decision to defer to the legislature on the issue of punitive damages is still further buttressed by the very recent decision of the supreme court in *Reeder v. Daniel*, 61 S.W.3d 359, 364–65 (2001), holding that the comprehensive action of the legislature regarding liability of alcohol providers precludes judicial creation of a common law cause of action for serving alcohol to persons under eighteen years of age. *Id.* Recognizing that the legislature has been especially active in the area of liability for serving alcoholic beverages, as evidenced by the more than 200 chapters of the Alcoholic Beverage Code now regulating production, sale, furnishing, consumption, and storage of alcoholic beverages, the court stated that it would refuse to disturb the legislative regulatory scheme by creating such a cause of action. *Id.* We sustain appellant's eighth point. As a result, we need not reach point nine.

### Conclusion

We reverse the trial court's judgment and remand this case for a new trial.

LIVINGSTON, J. filed a dissenting opinion.

TERRIE LIVINGSTON, Justice, dissenting.

"The expressed public policy of the Alcoholic Beverage Code is the protection of the welfare, health, peace, temperance, and safety of the people of the state." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex.1987); *see also* TEX. ALCO. BEV.CODE ANN. § 1.03 (Vernon 1995). "The enactment of the Texas Alcoholic Beverage Code and the statutes relating to driving while intoxicated are clear evidence of the Legislature's explicit recognition of the dangers associated with intoxication and the need to protect the public." *El Chico*, 732 S.W.2d at 312–13. Today, this court slaps a strict limitation on the causes of action created by the Texas Legislature by eliminating the right of an injured party to collect punitive damages from a provider of beverages simply because the statute fails to affirmatively state punitive damages are recoverable. I respectfully disagree with this conclusion for several reasons.

First, the Dram Shop Act was passed by the state legislature on June 1, 1987. It became effective on June 11, 1987. In the interim, on June 3, 1987, the Texas Supreme Court issued its landmark decision, *El Chico Corp.* The *El Chico* decision was this state's first opinion recognizing a common-law cause of action for negligence and, therefore, liability against a provider who "negligently" serves or continues to serve an intoxicated patron. Historically, our state had failed to impose a duty on a provider because of the patron's intervening intoxication and negligence in driving while intoxicated. The patron's consumption was viewed as the sole proximate cause of the patron's intoxication and resulting injury to a third party. *Id.* at 309. Also, even if providing the liquor could be the proximate cause of the intoxication, the

injury to the third person was deemed unforeseeable. *Id.*

In creating this new, civil duty, the court relied heavily on the legislature's previous enactment of section 101.63(a) of the alcoholic beverage code, which imposed criminal liability on any person who knowingly sold an alcoholic beverage to an intoxicated person. TEX. ALCO. BEV.CODE ANN. § 101.63(a) (Vernon 1995). The court determined that this code provision established the standard of care for providers and consequently created civil negligence as a matter of law. In other words, this provision created strict liability for persons who violated the standard of care. *El Chico Corp.*, 732 S.W.2d at 313. The court further determined that the new dram shop provisions in the alcoholic beverage code, enacted two days before its decision, were not applicable to the *El Chico* case because the cause of action accrued before the dram shop provisions' effective date, June 11, 1987. Of importance was the court's observation that although the addition of the dram shop provisions created statutory civil liability, the Act also created a "much more onerous burden of proof for an injured plaintiff than we have in this opinion." *Id.* at 314. The court observed that the dram shop provisions imposed liability only when it was "*apparent* to the provider that the individual being ... served ... [was] *obviously* intoxicated to the extent he presented a *clear danger* to himself and others." *Id.*

Here, the majority has concluded that the legislature did not intend to allow for punitive damages in a dram shop cause of action. The majority's conclusion is based primarily on the "silence on the issue of exemplary damages [that must be read] in conjunction with the Act's exclusivity provisions." However, this is not the approach our supreme court has used in deciding other issues related to the scope of the Act's provisions.

For example, in *Smith v. Sewell,* the supreme court had to determine whether the comparative responsibility provisions of the Texas Civil Practice and Remedies Code applied to the Dram Shop Act. *Smith v. Sewell,* 858 S.W.2d 350 (Tex.1993). Specifically, the court had to decide whether the liability of providers extended to the recipient of the alcohol when that person's own intoxication resulted in injuries to the recipient as opposed to third parties. *Id.* at 354. The court stated it must follow the rule that statutes in derogation of the common law are not to be strictly construed, noting however that when a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed so as not to extend beyond its plain meaning. *Id.* (citing TEX. GOV'T CODE ANN. § 312.006(b) (Vernon 1998) and *Dutcher v. Owens,* 647 S.W.2d 948, 951 (Tex.1983)).[1] In assessing whether the comparative responsibility statute should limit the potential recovery, the court decided it should because the Dram Shop Act was grounded in negligence and because a dram shop cause of action *was not excluded from the comparative responsibility statute* as were other specifically listed causes of action. *Id.* at 355; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 33.002 (Vernon 1997). Thus, the court concluded the comparative negligence of others should be considered in the award of damages for liability under the Dram Shop Act. This court has followed *Sewell. See Lewis v. Skippy's Mis-*

---

1. Section 312.006(a) instructs us to liberally construe the revised statutes in order "to achieve their purpose and to promote justice." Section 312.006(b) dictates that the common-law rule requiring strict construction of statutes in derogation of the common law does not apply to the revised statutes. TEX. GOV'T CODE ANN. § 312.006(a), (b).

*take Bar,* 944 S.W.2d 1, 5 (Tex.App.—Fort Worth 1996), *rev'd on other grounds, Southland Corp. v. Lewis,* 940 S.W.2d 83 (Tex.1997); *I–Gotcha, Inc. v. McInnis,* 903 S.W.2d 829, 830 (Tex.App.—Fort Worth 1995, writ denied).

Likewise, the exemplary damages statute has also listed the causes of action to which it is inapplicable. Section 41.002 of the civil practice and remedies code, which addresses the availability of exemplary damages and imposes caps on them, does not include dram shop actions in its list of causes of action that are exempt from exemplary damages claims. TEX. CIV. PRAC. & REM.CODE ANN. § 41.002(d) (Vernon Supp. 2001).

And interestingly, this statute includes the following mandate:

> Except as provided by Subsections (b) and (d) [inapplicable here], in an action to which this chapter applies, the provisions of this chapter prevail over all other law to the extent of any conflict.

*Id.* § 41.002(c). Additionally, the exemplary damages statute also includes its own definition of exemplary damages: any damages awarded as a penalty or by way of punishment, including punitive damages. *Id.* § 41.001(5) (Vernon 1997). Thus, the majority's search for the true meaning of the word "damages" under the Dram Shop Act is unnecessary because the exemplary damages statute itself defines the term.

Because the Dram Shop Act is silent concerning the recovery of punitive damages, and section 41.002 does not exclude the recovery of punitive damages in dram shop cases, we should hold that punitive damages may be recovered. *See, e.g., Smith,* 858 S.W.2d at 356. When the exemplary damages' statutory definition is read in conjunction with the expressed public policy purpose of the alcoholic beverage code to protect the welfare, health, peace, temperance, and safety of the people of the state, we should conclude that the legislature did not intend to eliminate exemplary damages in dram shop causes of action.

For these reasons, I would overrule appellant's point eight that challenges appellee's right to recover exemplary damages and address the legal sufficiency challenge to the jury's findings of gross negligence and exemplary damages.