In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-360 CV


____________________



MASON CONSTRUCTION, INC., Appellant



V.



KEVIN ROBERTSON D/B/A BAYOU DRILLING, Appellee






On Appeal from the County Court at Law No. 1


Jefferson County, Texas


Trial Court Cause No. 88758






MEMORANDUM OPINION


 Kevin Robertson d/b/a Bayou Drilling, appellee, received a contract from Mason
Construction, Inc., appellant, to drill under-reams at Goodyear Tire & Rubber Company.
After experiencing various problems at the job site, Bayou removed its rigs and sued
Mason, alleging Mason breached the contract. The jury found Mason failed to comply
with the agreement and Mason's failure was not excused. The jury awarded Bayou
damages in the amount of $50,688.75, the difference between the agreed price and the
costs Bayou would have incurred in completing the contract. Mason argues the trial court
erred in not submitting requested instructions on the affirmative defenses of waiver and
payment, and argues the evidence was insufficient to support the damages award. We hold
the evidence was legally sufficient to support the damages, but the trial court erred in
refusing to submit the waiver instruction. The judgment is reversed and the case is
remanded for a new trial.

The Dispute


 Mason asked Bayou to submit a bid for drilling under-reams at Goodyear Tire and
Rubber Company's Specialty Polymers Project. Mason requested Bayou break its bid
down into cost per hole. Bayou submitted a "flat bid" of $100,080.00 to Mason. Bayou's
bid listed prices per hole for drilling the various-sized holes called for by Goodyear's
plans. Bayou's bid provided that, as long as drilling was completed within the 83-day time
frame, no "stand-by" time would be charged for delays. 

 Mason awarded the contract to Bayou. The contract incorporated Bayou's bid letter
by reference, and the bid letter was also attached to the contract as an exhibit. The
contract described the work as drilling under-reams based upon Bayou's bid of unit prices
per hole. Section 3 of the contract provided that Bayou would be paid every two weeks
on work completed, and the remainder of the contract price would be paid to Bayou upon
final completion of the work. Section 4, which is at the heart of this dispute, provided as
follows:

 The Contractor [Mason] reserves the right to make changes in materials
to be furnished or work to be performed under this Subcontract, or additions
thereto or omissions therefrom, upon written order to the Subcontractor
[Bayou]. 

 Any additions or reductions to be made to or from the amount of the
contract price resulting from changes in work or materials furnished shall be
agreed upon in writing by the parties hereto, such agreement not being valid
unless signed by an officer of the Contractor. In case of disagreement
between the parties hereto as to additions or reductions the same shall be
determined by the Architect or Engineer by certificate in writing. No
addition or reduction in contract price shall be binding upon the Contractor
unless agreed upon in writing or determined by the Architect or Engineer as
hereinbefore provided for.


 On Bayou's first day at the site, the various locations Mason wanted Bayou to drill
were marked with flags, and Bayou was instructed that the marked spots were to be drilled
with 36-inch shafts with 66-inch bells. Bayou drilled two holes, and then waited for
concrete to arrive before belling the holes. Belling could not be done until concrete
arrived because, if the holes were not filled with concrete, they would fill with water and
collapse. After five or six holes were drilled, belled, and filled with concrete, Mason told
Bayou that the holes should have had larger bells. Robertson testified the bells were
drilled incorrectly because the holes were marked incorrectly and he was given improper
instructions. Robertson stated he had correctly followed the instructions he was given
regarding bell size. Architects and engineers called to the site decided the holes should be
re-drilled, so Bayou drilled three additional shafts.

 Later that day, Bayou began experiencing problems with bell sizes larger than 72
inches. Because of the condition of the ground, the holes would not stay intact long
enough to be belled and poured. Goodyear's architects and engineers were again called
to the site, and they decided to increase the shaft size to 48 inches, since a smaller ratio
between shaft size and bell size reduced the likelihood of collapse. Bayou did not have the
necessary equipment to drill and bell a 48-inch shaft, so Robertson subcontracted the work
to Batten Drilling.

 When Bayou arrived at the site the next day, there were flags in the ground, but
there were no notations on them as to what size holes should be drilled. Robertson
consulted Craig Atkins, the site superintendent for Mason and Bayou's direct supervisor,
and Atkins told him to drill 36 piers for a pipe rack. The holes were to be 24-inch shafts
with 48-inch bells. After Bayou had drilled about 24 holes, its work was stopped by a
Mason representative, who said the holes should have been 30-inch holes with 60-inch
bells. Mason then began using a backhoe to fill the holes with dirt. At that time, Whatley,
a representative of Goodyear, approached Robertson and asked what was happening. 
Robertson told Whatley "apparently, the information didn't make it across the street about
us making sure these holes are marked," and "They're wasting my time and spending your
money." Atkins heard the conversation. After Whatley walked away, Atkins grabbed
Robertson's coveralls and told Robertson not to mention money or Mason's mistakes, and
not to talk to the customer. Robertson stated he then ascertained the correct hole size from
either the inspector or Atkins and returned to drilling.

 Robertson testified that the new work should have been included in a change order
because the larger holes called for bigger machinery, more work, and required Bayou to
pay Batten for labor and lodging. Bayou was also operating two of its own trucks. 
Bayou's expert witness, Arceneaux, testified that the new work should have been
memorialized in writing, and it was not appropriate for Mason to expect Bayou to continue
working without a change order.

 On the second or third day of work, Mason hired another drilling company, Trak,
to work at the site. Robertson testified that Mason had hands helping Trak by moving dirt,
had an inspector with Trak at all times, and always had one to three concrete trucks
working with Trak, but did not give Bayou the same assistance.

 Robertson testified the problems with dirt not being moved out of the way and
concrete not arriving on time continued. To guarantee that Bayou would receive payment,
Robertson spoke with Gilbert Andrus, Mason's project manager, and requested that the
changes to the contract be memorialized in writing. He later sent Andrus a letter
containing the same request. Mason did not sign a change order. Andrus testified that,
although the contract required change orders to be in writing, "it was not followed in this
strictest letter of the contract." Bayou continued working and invoicing Mason. Andrus
denied ever receiving Bayou's request for a change order. 

 Robertson testified that, at some point, Andrus instructed him not to come to the site
because of the confrontation which had occurred between Atkins and Robertson. After a
few days, Robertson confronted Andrus about the lack of a written contract. Robertson
testified Andrus' response was "Well, son, things change." After this meeting, Robertson
pulled Bayou's trucks off the job site, and sent a letter to Andrus, which stated Mason had
breached the contract and demanded payment of the balance due. Batten continued on the
job. Bayou invoiced Mason for Batten's work, and Mason paid the invoices.

Legal Sufficiency of Bayou's Evidence


 Mason contends Bayou's evidence of damages was legally insufficient. (1) Because
this issue, if sustained, would require rendition of judgment in Mason's favor, we will
address it first. See Horrocks v. Texas Dep't of Transp., 852 S.W.2d 498, 499 (Tex.
1993) (citing National Life & Accident Ins. Co. v. Blagg, 438 S.W.2d 905, 909 (Tex.
1969)). 

 When an appellant attacks the legal sufficiency of an adverse finding on an issue for
which it does not have the burden of proof, it must demonstrate that there is no evidence
to support the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983). In reviewing a no evidence point, we consider only the evidence and inferences
that tend to support the finding and disregard all contrary evidence and inferences. See
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). If there is more than a scintilla
of evidence to support the finding, the evidence is legally sufficient. See Browning-Ferris,
Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). 

 A jury may award only those damages which fairly and reasonably compensate the
plaintiff for the injury. Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614
(Tex. 1996). Damages which are too remote, too uncertain, or purely conjectural are not
recoverable. Arther Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex.
1997). A plaintiff must show the amount of lost profits by competent evidence with
reasonable certainty. Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 505 (Tex. 2001);
Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994). "[O]pinions or
estimates of lost profits must be based on objective facts, figures, or data from which the
amount of lost profits may be ascertained." Capital Metro. Transp. Authority/Cent. of
Tennesee Ry. and Navigation Co., Inc. v. Central of Tennessee Ry. & Navigation Co.,
Inc., 114 S.W.3d 573, 579 (Tex. App.--Austin 2003, no pet.) (citing Szczepanik, 883
S.W.2d at 649). 

 Robertson calculated Bayou's lost profits by deducting the cost of performance from
the contract price. He deducted anticipated labor costs of $18,592.00, based upon 83
eight-hour days, $1,155 for insurance procurement, and $8,300 for fuel costs, which
yielded a net anticipated profit of $72,033.00. Robertson then subtracted the $11,591.25
Mason had already paid Bayou for its work, for a total of $60,441.75 in net lost profits. 
According to Robertson, if the contract had taken less than 83 days to complete, Bayou's
profit would have been larger because of the labor costs it would have saved. Robertson
testified that Bayou typically made 50-75% profit on its drilling jobs. 

 Robertson testified Bayou's invoices for Batten's work under the subcontract were
paid in the amounts of $18,750 and $12,325. Robertson also stated he did not include the
costs of workers' compensation, FICA, equipment maintenance, depreciation, insurance
on equipment, or office overhead in the calculation of Bayou's labor costs. Bayou did not
charge Mason for standby time because the contract provided standby time would not be
charged as long as work was completed within 83 days.

 The record contains testimony from appellee's witnesses which disagrees with the
testimony of Bayou's witnesses, and attempts to explain or mitigate Bayou's evidence of
damages. However, the jury was free as factfinder to believe Bayou's witnesses and
disbelieve other witnesses. The jury found damages of $50,688.75, rather than Bayou's
figure of $60,441.75, which suggests the jury considered costs Bayou had omitted in
calculating its damages. As an appellate court, we must consider only the evidence
supporting the finding and disregard contrary evidence and inferences. Catalina, 881
S.W.2d at 297. Because there is more than a scintilla of evidence to support the jury's
finding of damages, appellant's third issue is overruled.

Mason's Requested Instruction on Waiver 


 Mason argues the trial court erred in failing to submit its requested instruction on
waiver. The standard of review for alleged error in the jury charge is abuse of discretion. 
Steak & Ale of Tex., Inc. v. Borneman, 62 S.W.3d 898, 904 (Tex. App.--Fort Worth
2001, no pet). The discretion afforded the trial court in submitting instructions is not
absolute. "The court shall submit the questions, instructions and definitions in the form
provided by Rule 277, which are raised by the written pleadings and the evidence." Tex.
R. Civ. P. 278; see Union Pac. R.R. Co. v. Williams, 85 S.W.3d 162, 166 (Tex. 2002). 
Litigants are entitled to have controlling fact issues submitted to the jury. Triplex
Communications, Inc. v. Riley, 900 S.W.2d 716, 718 (Tex. 1995); see also Bel-Ton Elec.
Serv. v. Pickle, 915 S.W.2d 480, 481 (Tex. 1996). 

 For an instruction to be proper, it must: (1) assist the jury, (2) accurately state the
law, and (3) be supported by the pleadings and evidence. Borneman, 62 S.W.3d at 904-05
(citing Tex. R. Civ. P. 277 and 278). When evaluating whether a party is entitled to a jury
instruction, the appellate court must examine the record for evidence supporting
submission of the instruction, and ignore evidence to the contrary. Sims v. Washex Mach.
Corp., 932 S.W.2d 559, 561 (Tex. App.--Houston [1st Dist.] 1995, no writ) (citing Elbaor
v. Smith, 845 S.W.2d 240, 243 (Tex. 1992)).

 Question 2 of the charge was as follows: "Was the failure of Mason Construction,
Inc. to comply excused?" The court included the following instruction with Question 2:
"Failure to comply by Mason is excused by Bayou Drilling's previous failure, if any, to
comply with a material obligation of the same agreement." Mason requested the following
instruction on waiver: "Failure to comply by Mason is excused if compliance is waived
by Bayou. Waiver is an intentional surrender of a known right or intentional conduct
inconsistent with claiming the right." See generally United States Fidelity & Guar. Co.
v. Bimco Iron & Metal Corp., 464 S.W.2d 353, 357 (Tex. 1971). The trial court refused
Mason's waiver instruction, and Mason objected. Mason had pled waiver. At trial, the
jury heard evidence that, although Mason never granted Robertson's request for a written
change order, Bayou continued on the job and hired a subcontractor to do the drilling it
lacked the equipment to perform. In fact, Andrus denied receiving a request for a change
order. Because Mason's requested instruction on waiver was supported by both pleadings
and evidence and was a controlling fact issue, the trial court erred in denying the
instruction. 

 We must next determine whether the omission of the instruction requires a new
trial. Error in the jury charge is reversible only if it probably caused the rendition of an
improper judgment or prevented the appellant from properly presenting the case on appeal. 
Tex. R. App. P. 44.1(a); Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex.
2003). To determine harm, the appellate court must consider the entire record, including
the parties' pleadings, the evidence, and the charge. See Timberwalk Apts., Partners, Inc.
v. Cain, 972 S.W.2d 749, 756 (Tex. 1998). When the error in the jury charge relates to
a contested controlling fact issue, an erroneous instruction will likely require a new trial. 
See Southwestern Bell Tel. Co. v. John Carlo Tex., Inc., 843 S.W.2d 470, 472 (Tex.
1992); Smith-Hamm, Inc. v. Equipment Connection, 946 S.W.2d 458, 463-64 (Tex. App.--
Houston [14th Dist.) 1997, no writ). 

 The omission of the waiver instruction, and the inclusion of a single instruction on
prior breach, misinformed the jury; the instruction, in effect, says prior breach by Bayou
was the only way Mason's breach would be excused. Whether Bayou waived compliance
after Mason's breach was not submitted to the jury. We are not persuaded by Bayou's
argument that, because Mason's counsel argued waiver in his summation, any error was
harmless. The question of whether Bayou waived the requirement that change orders be
in writing was key to determining Mason's liability for that noncompliance. Asking the
jury to resolve that controlling fact issue without a proper instruction was error. 
Appellant's first issue is sustained. 

 Because we hold the refusal of the instruction on waiver requires a new trial, we
need not address Mason's factual sufficiency issue or the trial court's refusal of Mason's
requested instruction on payment. 

 The judgment is reversed, and this cause is remanded for a new trial. 

 REVERSED AND REMANDED. 

 _________________________________

 DAVID GAULTNEY

 

Submitted on April 29, 2004 

Opinion Delivered October 7, 2004

 

Before McKeithen, C.J., Burgess and Gaultney, JJ.



 
1. Mason did not object to the trial court's submission of Question 3 (the measure of
damages), and does not contend that calculating Bayou's damages as lost profits was
erroneous.